Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY THORNBURGH,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CEDAR REALTY TRUST, INC.,<br>BRUCE J. SCHANZER, GREGG A.<br>GONSALVES, ABE EISENSTAT,<br>STEVEN G. ROGERS, SABRINA<br>KANNER, DARCY D. MORRIS,<br>RICHARD H. ROSS, and SHARON<br>STERN,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities<br>      Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities<br>      Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Anthony Thornburgh ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Cedar Realty Trust, Inc. ("Cedar" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

Defendants' efforts to sell the Company's assets in a series of transactions to DRA Advisors LLC, KPR Centers (collectively, the "DRA-KPR Joint Venture"), and Wheeler Real Estate Investment Trust, Inc., through merger vehicles Whlr Merger Sub Inc. ("Merger Sub 1"), Whlr Op Merger Sub LLC ("Merger Sub 2"), (and collectively with Parent, "Wheeler") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transactions").

2.    The terms of the Proposed Transactions were memorialized in a March 2, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Cedar will sell a portfolio of 33 grocery-anchored shopping centers to a joint venture between a fund managed by the DRA-KPR Joint Venture for $840.0 million. In addition, Cedar will sell the rights to two grocery anchored redevelopment projects in exchange for $80.5 Million. Lastly, the Company entered into an agreement to sell the Company and its remaining assets to Wheeler after completion of the above-described transactions, in an all-cash merger transaction that values the assets at $291.3 million. As a result of the Proposed Transactions each outstanding share of Company stock will be exchanged for approximately $29.00 per share in cash. Absent judicial intervention, the Proposed Transactions will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transactions.

3.    Thereafter, on April 5, 2022, Cedar filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transactions.

4.    The Proposed Transactions re unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transactions to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transactions, Company Board

Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on April 5, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transactions.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transactions, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Cedar, provided by Cedar management to the Board and the Board's financial advisor Jones Lang LaSalle Securities, LLC ("JLL") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by JLL, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transactions will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transactions.

## PARTIES

7.      Plaintiff is a citizen of Tennessee and, at all times relevant hereto, has been a Cedar stockholder.

8.      Defendant Cedar, is a fully-integrated real estate investment trust which focuses on the ownership, operation and redevelopment of grocery-anchored shopping centers in high-density urban markets from Washington, D.C. to Boston. Cedar is incorporated in Maryland and has its principal place of business at 928 Carmans Road, Massapequa, New York 11758.  Shares of Cedar common stock are traded on the New York Stock Exchange under the symbol "CDR".

9.     Defendant Bruce J. Schanzer ("Schanzer") has been a Director of the Company at all relevant times.   In addition, Schanzer serves as the Company's Chief Executive Officer ("CEO") and President.

10.     Defendant Gregg A. Gonsalves ("Gonsalves") has been a director of the Company at all relevant times.

11.     Defendant Abe Eisenstat ("Eisenstat") has been a director of the Company at all relevant times.

12.     Defendant Steven G. Rogers ("Rogers") has been a director of the Company at all relevant times.

13.     Defendant Sabrina Kanner ("Kanner") has been a director of the Company at all relevant times.

14.     Defendant Darcy D. Morris ("Morris") has been a director of the Company at all relevant times.

15.     Defendant Richard H. Ross ("Ross") has been a director of the Company at all relevant times.

16.     Defendant Sharon Stern ("Stern") has been a director of the Company at all relevant times.

17.     Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Wheeler is a fully integrated, self-managed commercial real estate investment company focused on owning and operating income-producing retail properties with a primary focus on grocery-anchored centers. Shares of Wheeler common stock are traded on the NasdaqCM Stock Exchange under the symbol "WHLR."

19.     Non-Party Merger Subs are wholly owned subsidiaries of Wheeler created to effectuate the Proposed Transactions.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District and the Company maintains its principal place of business in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

23.     Cedar Realty Trust, Inc. is a fully-integrated real estate investment trust which focuses on the ownership, operation and redevelopment of grocery-anchored shopping centers in high-density urban markets from Washington, D.C. to Boston. The Company's portfolio (excluding properties treated as "held for sale") comprises 54 properties, with approximately 8.1 million square feet of gross leasable area.

24.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transactions, indicated impressive financial success.  For example, in the November 4, 2021 press release announcing its 2021 Q3 financial results, the Company highlighted  NAREIT-defined Funds from operations (FFO) of $0.62 per diluted share for the quarter and operating FFO of $0.63 per diluted share for the quarter.  The company also reported that it had collected 96.8% of base rents and monthly charges for the quarter

25.     The company has maintained success for a significant period of time. As a result, Cedar continues to maintain payment of distributions even in light of global economic challenges. On January 20, 2022, the Company announced that it would maintain its payment of a cash dividend of $0.453125 per share.

26.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Cedar.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

27.     Despite this upward trajectory, the Individual Defendants have caused Cedar to enter into the Proposed Transactions without providing requisite information to Cedar stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     First and foremost the Preliminary Proxy Statement fails to give adequate information as to why the Board agreed to the structure of the Proposed Transactions, namely the selling off of numerous valuable assets prior to a sale of the remainder of the Company, thus

potentially lowering the amount of consideration payable to the Company stockholder on a per share basis.

30.    Additionally, the while the Preliminary Proxy Statement indicates that a "Special Committee" of the Board composed of independent directors was created to run the previous 2019-2020 sales process, it does not give adequate reasoning as to whether this Special Committee was reconstituted or if one of a similar nature was created to run the sales process leading to the Proposed Transactions.

31.    The Preliminary Proxy Statement also indicates that no less than three activist stockholders sent letters nominating competing directors to the Board in February 2021, after which the Board reached an agreement with said entities to avoid the potential of protracted proxy fights.  However, little to no information is given regarding what affect, if any, such actions had on the renewed sales process leading to the Proposed Transactions.

32.    In addition, the Preliminary Proxy Statement fails to give adequate information as to why the Board engaged multiple financial advisors.  Notably, it appears that BofA Securities, Inc. ("BofA"), who was engaged by the Special Committee as a financial advisor during the previous 2019-2020 sales process, took part in some financial advisory role to the Board during the sales process leading up to the Proposed Transactions.  In addition, the Preliminary Proxy indicates that CBRE Group, Inc. ("CBRE") was engaged by the Company to advise the Board with respect to the potential sale of redevelopment projects. However, the Preliminary Proxy fails to give any information regarding BofA's specific role, how much BofA or CBRE were paid for their services, or whether BofA or CBRE created any fairness opinion and/or any analyses which were submitted to the Board.

33.    Moreover, the Preliminary Proxy Statement is silent as to the nature of the

confidentiality agreements entered into between the Company on the one hand and the DRA-KPR Joint Venture or Wheeler on the other hand, whether these agreements differed from any other agreement with potentially interested third parties which were or were not specifically mentioned by the Preliminary Proxy Statement, and if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

34.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transactions***

35.    On March 2, 2022, Cedar issued a press release announcing the Proposed Transactions.  The press release stated, in relevant part:

> **MASSAPEQUA, N.Y., March 2, 2022 /PRNewswire/** -- Cedar Realty Trust (NYSE: CDR) (the "Company") today announced that following its previously announced dual-track review of strategic alternatives, it has entered into definitive agreements for the sale of the Company and its assets in a series of related all-cash transactions:
>
> - An agreement to sell a portfolio of 33 grocery-anchored shopping centers to a joint venture between a fund managed by DRA Advisors LLC and KPR Centers for $840.0 million.
>
> - An agreement to sell the Revelry redevelopment project for $34.0 million. Cedar is negotiating the sale of the Northeast Heights redevelopment project for $46.5 million. (In the event the sale of the redevelopment projects is not completed prior to closing of the grocery-anchored shopping center portfolio sale, the DRA-KPR joint venture has agreed to acquire these two projects at the aggregate price of $80.5 million.)
>
> - An agreement to sell the Company and its remaining assets to Wheeler Real Estate Investment Trust, Inc. (NASDAQ: WHLR), after completion of the above-described transactions, in an all-cash merger transaction that values the assets at $291.3 million.
>
> The transactions, which were unanimously approved by the Company's Board of Directors, are estimated to generate total net proceeds, after all transaction expenses, of more than $29.00 per share in cash, which will be distributed to shareholders upon completion. The $29.00 per share of estimated net proceeds

209fc74718bc8010

represent a 16.6% premium to Cedar's closing share price on March 2, 2022, and a 70.6% premium to the Company's closing share price on September 9, 2021, the last day of trading prior to the announcement of the dual-track review of strategic alternatives.

"We believe this combination of transactions represents the best possible outcome for our common shareholders and we are very pleased with the progress thus far of our dual-track review of strategic alternatives," said Bruce Schanzer, Cedar's President and Chief Executive Officer.

Upon completion of the transactions, Cedar will be wholly owned by Wheeler Real Estate Investment Trust, and Cedar's common stock will no longer be publicly traded. Pursuant to the terms of the merger agreement with Wheeler, all shares of Cedar's currently outstanding 7.25% Series B Preferred Stock and 6.50% Series C Preferred Stock, will remain outstanding shares of Cedar preferred stock following the merger and will remain listed on the New York Stock Exchange under their current ticker symbols.

The transactions are not subject to financing conditions and are expected to close by the end of the second quarter of 2022, subject to satisfaction of customary closing conditions, including approval by Cedar's common shareholders.

### *Potential Conflicts of Interest*

36.    The breakdown of the benefits of the deal indicate that Cedar insiders are the primary beneficiaries of the Proposed Transactions, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transactions not available to Plaintiff as a public stockholder of Cedar.

37.    Notably, Company insiders, currently own large, illiquid portions of Company stock, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transactions.   Significantly, while the Preliminary Proxy Statement provides the following, it fails to provide an accounting of the consideration such stock amounts will be exchanged for:

| Name and Address of Beneficial Owner | Number of Shares Beneficially Owned | Percentage of Class |
|---|---|---|
| **5% Holders:** | | |
| T. Rowe Price Associates, Inc. 100 E. Pratt Street Baltimore, Maryland 21202 | 2,174,989[1] | 15.59% |
| Ewing Morris & Co. Investment Partners Ltd. 1407 Yonge Street, Suite 500 Toronto, Ontario M4T 1YZ | 1,103,277[2] | 8.09% |
| Camac Partners, LLC 350 Park Avenue, 13th Floor New York, New York 10022 | 1,274,846[3] | 9.35% |
| **Directors and Officers:**[4] | | |
| Abraham Eisenstat | 41,829 | * |
| Gregg A. Gonsalves | 18,626 | * |
| Darcy D. Morris | 2,493[2] | * |
| Sabrina L. Kanner | 16,897 | * |
| Richard H. Ross | 2,493 | * |
| Steven G. Rogers | 19,746 | * |
| Sharon Stern | 6,093 | * |
| Bruce Schanzer | 404,763 | 2.97% |
| Robin Zeigler | 93,902 | * |
| Jennifer Bitterman | 23,593 | * |
| **Directors and Officers as a Group (10 persons)** | 630,525 | 5.48% |

38.     Additionally, Company insiders, currently own large amounts of Company stock options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transactions as follows:

**Cash Payments to Executive Officers and Non-Employee Directors in Respect of Company Equity Awards**

| | Restricted Stock Awards | | Restricted Stock Unit Awards | | | |
|---|---|---|---|---|---|---|
| | Shares of Restricted Stock (#) | Aggregate Payment for Restricted Stock ($)[1] | Number of Shares Underlying RSU Awards(#) | Aggregate Payment for RSU Awards ($)[2] | Dividend Equivalent Rights on RSU Awards ($)[3] | Total Equity Award Consideration ($) |
| **Executive Officers:** | | | | | | |
| Bruce J. Schanzer | 151,514 | 4,393,906 | 113,636 | 3,295,444 | 500,000 | 8,189,350 |
| Jennifer Bitterman | 19,117 | 554,393 | — | — | — | 554,393 |
| Robin Zeigler | 82,152 | 2,382,408 | — | — | — | 2,382,408 |
| **Non-Employee Directors:** | | | | | | |
| Abraham Eisenstat | 12,577 | 364,733 | — | — | — | 364,733 |
| Gregg A. Gonsalves | 12,577 | 364,733 | — | — | — | 364,733 |
| Sabrina L. Kanner | 12,577 | 364,733 | — | — | — | 364,733 |
| Darcy D. Morris | 2,493 | 72,297 | — | — | — | 72,297 |
| Steven G. Rogers | 12,577 | 364,733 | — | — | — | 364,733 |

| Richard H. Ross | 2,493 | 72,297 | — | — | — | 72,297 |
| Sharon Stern | 2,493 | 72,297 | — | — | — | 72,297 |

39.     In addition, certain employment agreements with certain Cedar executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Potential Payments to Named Executive Officers**

| Named Executive Officer | Cash Severance Payments ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Pension/ NQDC ($)[4] | Tax Reimbursements ($)[5] | Total ($) |
|---|---|---|---|---|---|---|
| Bruce J. Schanzer | 14,730,088 | 3,295,444 | 35,340 | 4,393,906 | 8,436,300 | 30,891,078 |
| Jennifer Bitterman | 1,735,000 | 554,393 | 357 | — | — | 2,289,750 |
| Robin M. Zeigler | 2,125,500 | 2,382,408 | 35,340 | — | 144,996 | 4,688,244 |

40.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41.     Thus, while the Proposed Transactions are not in the best interests of Cedar, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

42.     On April 5, 2022, the Cedar Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transactions.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transactions*

43.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transactions.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.  Information as to whether a Special Committee composed of independent directors was created or reconvened to run the sales process leading to the Proposed Transactions, and:

        i.  If so:

            1.  The specific membership of that committee;

            2.  The specific powers of that committee;

        ii.  If not:

            1.  The specific reasoning as to why no such committee was created;

    b.  The specific reasoning for engaging multiple financial advisors

    c.  The specific role of BofA

d.  The specific amount of consideration paid to or owed to BofA and CBRE for any services rendered to the Company or Board during the Sales Process;

e.  Whether either BofA or CBRE submitted any fairness opinion or financial analyses to the Board regarding the Proposed Transactions. If such items exist they must be disclosed;

f.  Adequate information regarding what effect, if any, the three potential proxy fights raised by activist stockholders in February 2021 had on the sales process;

g.  Whether the confidentiality agreements entered into by the Company on the one hand and either DRA-KPR Joint Venture or Wheeler on the other hand differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

h.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including DRA-KPR Joint Venture or Wheeler, would fall away; and

i.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides

illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Cedar's Financial Projections*

44.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for Cedar provided by Cedar management to the Board and JLL and relied upon by JLL in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, JLL noted that it reviewed, "analyzed certain financial forecasts prepared by the management of Cedar, which forecasts Cedar represented to JLL Securities were consistent with the best judgments of Cedar's management as to the future financial performance of Cedar and were the best available forecasts at the time with respect to such future financial performance of Cedar, including Cedar's corporate model."

46.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Cedar management provided to the Board and JLL. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

47.     With regard to the Projections prepared by Cedar Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a.  NOI, including all underlying necessary metrics, adjustments, and assumptions, including specifically: total base rent plus recoveries, management fee income and other income, property expenses including common area maintenance, real estate taxes and other taxes, tenant billable charges, bad debt expense, ground rent, management fees and other expenses;

b.  EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income from continuing operations, interest expense (including early extinguishment of debt costs), depreciation and amortization, minority interests' share of consolidated joint venture EBITDA, and discontinued operations;

c.  Funds From Operations ("FFO"), including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income (determined in accordance with GAAP), gains (losses) from sales of real estate properties, impairment write-downs on real estate properties directly attributable to decreases in the value of depreciable real estate, real estate related depreciation and amortization, and the specific adjustments made for partnerships and joint ventures to reflect FFO on the same basis;

d.  FFO per Share, including all underlying necessary metrics, adjustments, and assumptions, including specifically: all items necessary to calculate FFO listed above; and

e.  Unlevered Free Cash Flow ("UFCF"), and all underlying metrics to include the effect of tenant improvements, building improvements, other capital expenditures and unlevered unconsolidated joint venture income

48. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transactions. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by JLL*

51. In the Preliminary Proxy Statement, JLL describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52. With respect to the *Net Asset Value Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. Cash flow projections as calculated by Cedar management; and

    b. The specific inputs and assumptions used to determine the three different levels (a low point of $1.148 billion, a mid-point of $1.194 billion and a high point of $1.243 billion) of Total Implied Gross Real Estate Value.

53.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The terminal values for Cedar calculated;

      b.   The specific inputs and assumptions used to determine the utilized perpetuity growth rates of 1.1% to 1.6%;

      c.   The specific inputs and assumptions used to determine the utilized discount rate range of 6.8% to 7.3%;

      d.   Cedar's weighted average cost of capital utilized; and

      e.   The unlevered betas for a comparable group of companies utilized.

54.     With respect to the *Comparable Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The metrics for each comparable company;

      b.   The specific inputs and assumptions used to determine the Enterprise Value to 2022E EBITDA multiples reference range of 13.0x – 16.0x;

      c.   The specific inputs and assumptions used to determine the Price to 2022E FFO per Share multiples reference range of 10.5x – 13.0x;

      d.   The specific inputs and assumptions used to determine the Share Price Premium / (Discount) to NAV multiples reference range of (30%) – (18%);

55.     With respect to the *Selected Precedent Public REIT Mergers and Acquisitions ("M&A") Transaction Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The metrics for each precedent transaction;

      b.   The specific inputs and assumptions used to determine the utilized multiple reference range of Unaffected Stock Price of 10% - 35%;

    c. The specific inputs and assumptions used to determine the utilized multiple reference range of Consensus NAV, less transaction expenses of (10%) - 15%;

    d. The specific date on which each precedent transaction closed; and

    e. The value of each precedent transaction.

56. With respect to the *Selected Portfolio-Level Transaction Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific inputs and assumptions used to determine the utilized multiple reference range of Price Per Square Foot of $130 - $160; and

    b. The specific inputs and assumptions used to determine the utilized multiple reference range of Cap Rate of 7.2% - 6.8%.

57. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transactions.

58. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transactions re in his best interests as a public Cedar stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

59. Plaintiff repeats all previous allegations as if set forth in full herein.

60. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transactions.

61.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transactions.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

62.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

63.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

64.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

65.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

66.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transactions on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transactions.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

67.     Plaintiff repeats all previous allegations as if set forth in full herein.

68.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Cedar's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

71.     The Individual Defendants acted as controlling persons of Cedar within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Cedar to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Cedar and all of its employees.  As alleged above, Cedar is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transactions;

B.     In the event Defendants consummate the Proposed Transactions, rescinding them and setting them aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for
Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: April 22, 2022                    **BRODSKY & SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*